## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  09-CR-30107 |
| v. | ) | |
| | ) | |
| JEFFREY PRICE, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S NOTICE OF INTENT TO
## <u>INTRODUCE EVIDENCE OF OTHER ACTS OF CHILD MOLESTATION</u>

The United States of America, by and through James A. Lewis, United States Attorney, and Elly M. Peirson, Assistant United States Attorney, hereby gives notice of its intent to introduce evidence of defendant's other acts of child molestation under Federal Rule of Evidence 414 and 404(b).

This notice is properly filed more than 30 days prior to the commencement of trial.  "In a case in which the Government intends to offer evidence under this rule, the attorney for the Government shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least fifteen days before the scheduled date of trial or at such later time as the court may allow for good cause." Fed. R. Evid. 414.  For evidence admitted under Fed.R.Evid. 404(b), "reasonable notice in advance of trial" is required.

**Statement of Facts**

On September 9, 2009, the Sangamon County Child Advocacy initiated an investigation after a 16 year old female child, "RP," was referred to them by her physician for alleged sexual and physical abuse by the defendant, Jeffrey Price.  During this interview, RP stated that when she was around 10 to 12 years old, the defendant took photographs of her both nude and wearing her mother's lingerie, specifically thong panties.  Most of the photographs were taken in her parent's bedroom in Sangamon County, Illinois.  RP also stated that the defendant, physically abused her with a belt and his hands.

In addition, RP disclosed that she began menstruating at age 12 (during the same time period that the defendant took these photographs of her).  The defendant showed her how to use a tampon by inserting his fingers inside of her vagina.  She said he had a tampon in his hand and she is not sure why he inserted his fingers inside of her.  She said when she had a yeast infection; the defendant also inserted the medicine inside her vagina.  RP said she asked the defendant, whom she lived with, about going to the doctor to learn how to do a breast self exam.  The defendant responded by instructing her to pretend he was the doctor and he would do the exam.  She said on one occasion he showed her how to do an exam, and she demonstrated this by making a circular motion around her breasts with her hand.

RP reported that the defendant told her often that she was pretty and sexy and she had a nice body.  She said the defendant wanted to show her how to masturbate and wanted to buy her sex toys to help her accomplish the masturbation.  She disclosed

2

that the defendant asked her if she would scream and make a big deal about it if he came into her room in the middle of the night and tried to have sex with her, or would she just pretend to be asleep. She said she told him she would scream and make a big deal about it because it was not right. RP stated the defendant offered to have sex with her and told her he could teach her some things if she wanted to know. RP said the defendant offered to perform oral sex on her or told her if she wanted to try it she could perform oral sex on him. RP said that he has never touched her with anything other than his hands and has never forced himself on her. RP said all of the incidents with the defendant stopped at the point he found out she had lost her virginity. She said she asked him why he was mad and he told her he was kind of jealous, because he wished she lost her virginity with him.

On September 11, 2009, Department of Children and Family Services (DCFS) Investigator Misty Hatcher and Detective Paula Morrow with the Springfield Police Department met with Jeffery Price for the purpose of conducting an interview. During the interview, the defendant acknowledged his rights pursuant to *Miranda* and agreed to waive those rights.

The defendant stated that there was a prior DCFS investigation regarding inappropriate photographs of RP in 2004. He said several people made comments to him that RP could be a model. He said she was a very pretty young girl. Price explained that he took RP to Carlinville and met with a modeling agency from St. Louis. He said the agency wanted him to purchase a portfolio which was very expensive. He

decided to try and create a portfolio of RP himself.  He and RP's mother dressed RP in "cute outfits" and poses trying to build a portfolio. Detective Morrow asked the defendant if he had taken any nude pictures of RP.  He sighed and stated, "Not to my recollections, not that I remember."  When asked if he had taken any pictures of RP in lingerie, he said, "I may have, with her dressing up with her mom or her playing dress up," but he could not recall any specific details, other than that RP was 10 years old at the time.  The defendant denied posing nude with RP.

Detective Morrow asked the defendant if he had destroyed all of the photographs of RP and he said they were digital and he had a computer that crashed and he had no way of recovering them.  The defendant consented to the search of his Dell Inspiron laptop computer, Serial No 36WY0D1, on that same day.

On October 13, 2009, Detective Morrow spoke with the biological mother of RP (defendant's ex-wife).  She told Detective Morrow that she recalled the defendant taking a photograph of her and her daughter, RP, both of them nude, sitting on stools in their bedroom.  RP would have been about 9 years old at the time.  She told Detective Morrow that the defendant told her he wanted to take the picture for an "art" project he was working with on the internet.

During the search of the defendant's residence, law enforcement officers located several commercial movies of child erotica, involving minors with sexually suggestive themes and depictions.

Senior Special Agent (SSA) Michael Mitchell with Immigration and Customs Enforcement conducted a forensic examination of the defendant's Dell Inspiron laptop computer. SSA Mitchell recovered 21 movies and 937 images of minors engaged in sexually explicit conduct on the defendant's laptop computer of suspected child pornography. The majority of the images located by SSA Mitchell were found in the "Recycle Bin," having been last accessed by the computer user the morning of September 11, 2009 (the day of the defendant's interview with Detective Morrow).

In addition, SSA Mitchell located several images of RP. One of the images depicts RP on a bed completely nude facing the camera. She is posed in a sexually coy position, but uses her hands to cover some of her breast area. She has no apparent breast development and based on her body size, she appears to be approximately 9 to 11 years. Another image depicts RP completely nude next to an adult female who is also completely nude. This image is a full frontal depiction of RP and shows no breast development or pubic hair. There were several images of RP posed and dressed partially in lingerie. One such image depicts RP on a bed on her stomach. She is wearing only white thong-like panties and white thigh high stockings. Her buttocks are exposed and her lack of breast development is visible. She is looking at the camera in a sexually suggestive manner. SSA Mitchell determined that these images were located on the Dell Inspiron laptop hard drive produced in the "thumbschache_256.db" file. This file was last accessed on September 11, 2009 (the morning of the defendant's interview with Detective Morrow). A user with Windows Vista Operating System who

previews or views images causes those images to be stored on the user's computer in a centralized location on the system. This provides the system with access to images independent of their location.  The location that the system creates are named "thumbcache_xxx.db" (numbered by size 256kb, 512kb, 1024kb, 2048kb, etc.) based on the size of the images.  These images are recoverable through computer forensics. The hard drive in the defendant's Dell Inspiron laptop was manufactured in China.

SSA Mitchell also located peer to peer file sharing software on the defendant's computer as well as anti-computer forensic software designed to eliminate traces of evidence.  This program was set to automatically empty the recycle bin of its contents on a regular basis, however, this feature had not been run on the morning of Detective Morrow's interview.

The images of RP have been submitted to the National Center for Missing and Exploited (NCMEC) children as an identified series of child pornography.  NCMEC has since located at least 40 additional investigations worldwide where RP's images have been recovered.  These investigations revealed that the individuals who received RP's images did so primarily through peer to peer file sharing networks via the internet.

**Procedural History**

On November 18, 2009, the Peoria Grand Jury charged the defendant with a three-count indictment.  Count One charges Production of Child Pornography occurring on or between October 2002, through October 2004, pursuant to Title 18, United States Code, Sections 2251(a) and (e); Count Two charges Possession of Child Pornography on or about September 11, 2009, pursuant to Title 18, United States Code Section 2252A(a)(5)(B) and (b)(2); Count Three is a forfeiture count.

6

On May 5, 2010, the Springfield Grand Jury charged the defendant with a three count superseding indictment.  Count One charges Production of Child Pornography occurring on or between October 2002, through on or about September 11, 2009, pursuant to Title 18, United States Code, Sections 2251(a) and (e); Count Two charges Possession of Child Pornography on or about September 11, 2009, pursuant to Title 18, United States Code Section 2252A(a)(5)(B) and (b)(2); Count Three charges Access with Intent to View Child Pornography on or about September 11, 2009, pursuant to Title 18, United States Code Section 2252A(a)(5)(B) and (b)(2).  The indictment also contains a forfeiture notice.

The factual basis for Counts One, Two and Three involve the images of RP.  Count Two also refers to the additional 21 movies and 937 images of minors engaged in sexually explicit conduct on the defendant's laptop computer.

### Other Acts Evidence

The Government seeks to introduce the following other acts evidence during trial:

During this investigation, several witnesses, including RP reported that the defendant engaged in sexual acts with his younger sister.  Detective Morrow located and interviewed the defendant's younger sister, "JP."  JP disclosed that when she was approximately five years old, the defendant who was five years older than her, took her and another sister to a room in their house in Bloomington, Illinois and asked to see their private parts.  There was some touching and pointing with hands during this incident.

JP reported that when she turned 8 years old the abuse intensified.  The defendant had his own room in the family's new home in Springfield, Illinois, and he would engage in oral sexual intercourse with JP on multiple occasions from the time she was 8 until she was 14.  JP disclosed that when she was 12 years old the defendant "took her virginity."  She remembers feeling pain and bleeding as a result of this incident.  (She reported that she did not begin menses until two years later at age 14).  JP reported that the defendant would both bribe and threaten her, giving her "privileges" the other siblings did not have, such as hanging out in her room or listening to her stereo.  When she told him she was going to tell their parents, he said his parents already knew and assured her that their sexual intercourse was condoned by the Bible.

The defendant told JP that he was writing a "steamy sex novel" and he used her as the main character in the book.  He told her he needed to perform various sex acts with her so he could see how to write his book.  JP also recalled the defendant directing her to pose while he took sexually explicit photographs of her.  JP observed these photographs years later in a file cabinet along with a video of her.  The defendant advised JP that images of child pornography are traded on the internet through web sites.  He explained that the only way to access those sites to download images was to offer photographs to trade.  JP requested that the defendant give her the images and videos he had taken of her, but he refused saying they were his "precious possessions."

JP stated she confronted the defendant about the years of sexual abuse he perpetrated upon her after attempting suicide as an adult and realizing she needed

professional intervention.  The defendant agreed to attend therapy with her and admitted to all of the sexual abuse during the sessions.

Additional witnesses can corroborate the sexual abuse JP suffered.  The defendant admitted to Renee Hale, a family member, that he had sexual "relations" with a family member and when he was 12 that he had a sexual relationship or encounter with his younger sister.  When the defendant's ex-wife, Robin Price, confronted the defendant about the sexual abuse he perpetrated upon JP, he stated, "all the kids had done stuff."  Detective Morrow asked the defendant during his September 11, 2009 interview about any sexual contact he had with this younger sister.  The defendant  minimized, but did not deny the conduct stating it was "just kids playing around."  The defendant's father, Larry Price, stated the defendant did not deny what he did to JP, instead he stated he forgot about the incidents.

## Legal Framework

With certain exceptions, all relevant evidence is admissible and all irrelevant evidence is inadmissible. Fed. R. Evid. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. *See also Huddleston v. United States,* 485 U.S. 681, 687 (1988) (Rules 401 and 402 establish the broad principle that relevant evidence–evidence that makes the existence of any fact at issue more or less probable–is admissible unless the Rules of Evidence provide otherwise).

Federal Rule of Evidence 414 provides in pertinent part:

In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.

*Id*. "Offense of child molestation" is defined as including, "contact between any part of the defendant's body or an object and the genitals or anus of a child; . . . contact between the genitals or anus of the defendant and any part of the body of a child." *Id*. It is also defined as any conduct proscribed by Chapter 110 of title 18 of the United States Code. *Id*. Conspiracies and attempts are also included. *Id*. Here, defendant is accused of producing and attempting to produce child pornography, in violation of Title 18, United States Code, Section 2251, and possessing child pornography, in violation of Title 18, United States Code, Section 2252A, all of which are contained at Chapter 110 of Title 18 of the United States Code. Thus, the defendant is accused of an offense of child molestation as defined by Rule 414. Furthermore, defendant's conduct with JP, properly comprises an offense of child molestation under the rule. The defendant engaged in multiple acts of sexual penetration of JP's vagina with his tongue, hand and penis, and contact between his genitals and her mouth, hand and vagina. In addition, the defendant photographed and video taped sexual images of JP[1].

---

[1]It is without contention that the defendant's conduct with RP such as inserting his fingers into her vagina while teaching her to use a tampon, performing a breast cancer exam on her and inserting yeast infection medication into her vagina as described in the Statement of Facts comprise direct evidence of the crimes charged. These incidents occurred during the same time frame that the images were taken, show the defendant's prurient interest in sexually exploiting RP and are part of the conduct culminating in the photographs produced. However, should the Court have any reservation to their admissibility as *res gestae* evidence, the defendant's comments and

**I. Rule 414 permits the use of other acts to show the defendant has a propensity toward the sexual interest of young children**.

The Seventh Circuit has repeatedly held that evidence of this nature is properly admissible under Rule 414 and Rule 403 in child-exploitation cases.  In *United States v. Hawpetoss*, 478 F.3d 820, 824 (7th Cir. 2007), the Court of Appeals recognized the congressional intent to protect the public from child molesters by enacting these rules, upholding the district court's ruling to admit prior acts of child molestation:

> Congress enacted these new rules to "protect[ ] the public from rapists and child molesters . . . . In child molestation cases, for example, a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant . . . that simply does not exist in ordinary people." 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 414 App.01(2)(d), at 18-20 (Joseph M. McLaughlin ed., 2d ed.2005) (quoting 140 Cong. Rec. S12990 (daily ed. Sept. 20, 1994) (statement of Sen. Dole)).

*Id*. (n.7)  In addition to allowing admission on the basis of the non-character theories of relevance permitted under Rule 404(b), Rule 414 allows the admission of uncharged offense evidence for the purpose of establishing propensity.  The legislative sponsors explained:

> The new rules will supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b).  In contrast to rule 404(b)'s general prohibition of evidence of character or propensity, the new rules for sex offense cases authorize admission and consideration of evidence of an uncharged offense for its bearing "on any matter to which it is relevant." This includes the defendant's propensity to commit sexual assault or child molestation offenses, and assessment of the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense.

---

conduct with RP are also admissible under Rule 414.

140 Cong. Rec. H8991; see 140 Cong. Rec. S12990; 137 Cong. Rec. S3238-41; David J. Karp, *Evidence of Propensity and Probability in Sex Offense Cases and Other Cases*, 70 Chi.-Kent L. Rev. 15, 18-21 (1994);  *United States v. Cunningham*, 103 F.3d 553, 556 (7th Cir. 1996) (Rule 414 makes evidence of prior acts of child molestation admissible without regard to Rule 404(b)); *United States v. Castillo,* 140 F.3d 874, 879 (10th Cir. 1998) (Rule 414 "allows the prosecution to use evidence of a defendant's prior acts for the purpose of demonstrating to the jury that the defendant had a disposition of character, or propensity, to commit child molestation," replacing the "restrictive Rule 404(b), which prevents parties from proving their cases through 'character' or 'propensity' evidence").

In *United States v. Julian*, 427 F.3d 471, 486 (7th Cir. 2005), the Seventh Circuit recognized that "the legislative history reveals that by 'any matter to which it is relevant' Congress intended to include the defendant's propensity to engage in the offense of sexual assault with which he has been charged." (citing 137 Cong. Rec. 6032 (section-by-section analysis of Comprehensive Violent Crime Control Act of 1991, in which adoption of Rules 413-415 was initially proposed); 140 Cong. Rec. 23603 (statement of Rep. Molinari); see *United States v. Sioux*, 362 F.3d 1241, 1244 (9th Cir.2004); *United States v. Gabe*, 237 F.3d 954, 959 (8th Cir.2001); see also *United States v. Cunningham*, 103 F.3d 553, 556 (7th Cir.1996)).

In *Hawpetoss*, the Seventh Circuit noted that the admissibility of evidence under these rules does not "'displace the court's authority pursuant to Rule 403 to exclude evidence of a prior assault if its probative value is substantially outweighed by the danger of unfair prejudice.'" 478 F.3d at 824 (quoting from *Julian*, 427 F.3d at 487). While the Court recognized that other districts have established factors to consider in determining the admissibility of other acts of child molestation, the Seventh Circuit has declined not to adopt the "rigid" five factor test[2], instead encouraging the district court to adopt a more "flexible" approach as there are "innumerable" factors a court can consider in weighing the admissibility of uncharged act of child molestation. *Id*. at 825.

## II. Alternatively the Other Acts are Admissible Under Rule 404b

Federal Rule of Evidence 404(b) concerns evidence of other crimes, wrongs, or acts:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b).

---

[2]As articulated in *United States v. LeMay*, those factors are: "(1) the similarity of the prior acts to the acts charged, (2) the closeness in time of the prior acts to the acts charged, (3) the frequency of the prior acts, (4) the presence or lack of intervening circumstances, and (5) the necessity of the evidence beyond the testimonies already offered at trial." *United States v. LeMay*, 260 F.3d 1018, 1028 (9th Cir. 2001).

This Court employs a four-part test to determine whether prior conduct is admissible under Rule 404(b) and will find that the evidence was properly admitted if:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Sebolt,* 460 F.3d 910, 916 (7th Cir. 2006) (quoting *United States v. Price*, 418 F.3d 771, 783-84 (7th Cir. 2005)).

The admission of evidence under Rule 404(b) is within the sound discretion of the trial court. A trial court's evidentiary rulings will not be reversed on appeal absent a clear showing of abuse of discretion. *United States v. Harris*, 761 F.2d 394, 398 (7th Cir. 1985).

## III.  Standard of Proof for Admissibility

This Court need not conduct a mini-trial outside the presence of the jury to determine the admissibility of this evidence. The Seventh Circuit has held that eyewitness testimony as to the proffered conduct is sufficient for a jury to "reasonably conclude that the act occurred and the defendant was the actor." *United States v. Long*, 86 F.3d 81, 85 (7th Cir. 1996)(quoting *Huddleston v. United States*, 485 U.S. 681 (1988)); *See also United States v. Dhingra*, 371 F.3d 557, 566 ("[T]he testimony of a single witness . . .

satisfies the low-threshold test of sufficient evidence for the purposes of Rule 404(b).")(citations omitted).  JP will testify as an eyewitness to her proffered abuse and the facts and circumstances surrounding the abuse, thereby satisfying this admissibility criteria.  The Court need only conclude by a preponderance of the evidence that the defendant committed the other crime, wrong or act.  *Huddleston v. United States*, 485 U.S. 681, 689-90 (1988). *See also United States v. Hudson*, 884 F.2d 1016, 1018 n.2 (7th Cir. 1989) ("Before the Supreme Court's decision in *Huddleston*, the evidence had to be clear and convincing. *Shackleford*, 738 F.2d at 779. In *Huddleston*, however, the Supreme Court "invalidated the third prong of the *Shackleford* test." (citations omitted)).

## Argument

## I.  The Sexual Molestation of JP is Admissible under Rule 414

Following this analysis, this Court should admit the other acts of child molestation that occurred with JP under Rule 414. The defendant is charged with producing and attempting to produce visual depictions of a minor engaged in sexually explicit conduct.  The government's evidence will include the digital photographs of this minor.  The government will argue that these images depict the lascivious exhibition of the minor's genitals.  The jury, in its  determination of "lascivious exhibition" may consider whether the depiction is intended to elicit a sexual response in the viewer, including individuals who are sexually attracted to children.  *See United States v. Kemmerling*, 285 F.3d 644, 646 (8th Cir. 2002); *United States v. Amirault*, 173 F.3d

15

28 (1st Cir. 1999); *United States v. Dost*, 636 F.Supp. 828, 832 (S.D.Cal. 1986), *aff'd sub nom. United States v. Weigand*, 812 F.2d 1239 (9th  Cir. 1987).  *United States v. Knox*, 32 F.3d 733 (3rd Cir. 1994); *United States v. Horn*, 187 F.3d 781 (8th Cir. 1999); *United States v. Moore*, (7th Cir. 2000); *United States v. Noel*, (7th Cir. 2009).  Therefore, the defendant's motive and intent in producing these visual depictions is relevant and his other acts indicating a sexual interest in children, is highly probative of his intent and motive.

In *United States v. Burt*, 495F.3d 733, 741 (7th Cir. 2007), the Court of Appeals upheld the admissibility of a child's testimony that the defendant molested him as evidence to prove that the photos, while not depicting  molestation, were nevertheless a lascivious exhibition of the child's genitals.  In rejecting the defendant's argument that this evidence was inadmissible under Fed. R. Evid. 403, the Court held one of the factors the jury could use in determining whether the images was a lascivious exhibition of the child's genitals was "whether the picture or images [are] designed to elicit a sexual response in the viewer." *Id.*  Particularly since the defense theory in *Burt* was that the images were not child pornography. *Id.*  The defendant in this case also appears to advance the same theory, that the images he took of RP are not a lascivious exhibition of her genitals and therefore not child pornography.  The government anticipates that the defendant will advance the theory that he took these images of RP for her professional modeling portfolio or for artistic purposes.  As the Court of

Appeals held in *Burt,* this testimony is "directly relevant to the question of whether [the defendant is] a 'hard working professional photographer' taking pictures for a legitimate 'non-pornographic website' as the defense had stated in his opening statement" versus an individual who is using, persuading and coercing this minor to create images for his own sexual pleasure. 495 F.3d at 741.

Further, the defendant's theory aims to discredit RP's testimony by challenging her credibility.  As the court emphasized in *Burt* and *United States v. McGuire*, 627 F.3d 622, 627, 2010 WL 4908001, 5 (7th Cir.2010) (holding that other acts of molestation uncharged minors was admissible under 404(b), 414 and 413 because, "the defense was that [the victim] was a liar), the defendant's attack on the victim's credibility opens the door to the admissibility of other acts that corroborate her statements.   The Seventh Circuit upheld the admissibility of testimony by four other victims of childhood sexual abuse by a defendant to combat the nature of the defense, specifically that the victim named in the indictment was lying. *Id.*  The court held that the probative value of testimony of adult witnesses concerning their childhood sexual assault by defendant, including their testimony about the shame and fear that dissuaded them from telling their parents or others about what he had done to them, was not outweighed by danger of undue prejudice. *Id*.  The court found this evidence was material because the defense

was that the victim was a liar and the evidence established defendant's propensity for

molestation of young boys. *Id.*

In this case, the government anticipates that the defendant will claim that he has

no sexual interest in children and the images were not intended to elicit a sexual

response in anyone.  In order to combat these possible defenses, the government should

be permitted to argue that the defendant's sexual molestation of JP makes it more likely

that the defendant has a sexual interest in minors and, therefore, more likely that he

took the pictures in order to elicit a sexual response.

The government also anticipates that the defendant will argue that the other 21

videos and 937 images were not acquired, viewed or retained by him.  Again his sexual

interest in minor females, through the acts with his younger sister, negate this defense.

As he refused to give up his "precious" pictures of JP, he also retained and collected

other images of child pornography.

The defendant's sexual molestation of his sister shows his propensity to sexually

abuse vulnerable female members of his family.  Both JP and RP were prepubescent at

the time of abuse. *See United States v. Horn*, 523 F.3d 882, 888 (8th Cir. 2008) (probative

value of witness testimony that defendant raped her 11 years earlier was not

outweighed by prejudicial effect because the testimony proved defendant's

predisposition to abuse young female members of his family); *United States v. Bentley*,

475 F.Supp.2d 852, 856-57 (N.D. Iowa, 2007)(testimony of two witness who said they had been sexually abused as children by defendant admitted because, like the victim, both the witnesses were female, both had been young children at the time of the incidents, and the victim and witnesses were living with the defendant at the time of the abuse). In addition, the defendant posed JP and took sexual images of her, similar to the images he produced with RP that are the subject of this case. Courts throughout the country have allowed into evidence child and victim testimony regarding allegations of sexual abuse that occurred over a decade earlier. *See, e.g., United States v. Meacham*, 115 F.3d 1488, 1490-95 (10th Cir. 1997) (over 30 years); *United States v. Koruh*, 210 F.3d 390, 2000 WL 342252, at **1, 3-4 (10th Cir. 2000) (unpublished opinion) (16 to 20 years); *United States v. Roberts*, 185 F.3d 1125, 1141-43 (10th Cir. 1999) (ongoing sexually assaultive conduct against numerous victims between 1977 and 1993); *United States v. Larson*, 112 F.3d 600, 604-05 (2d Cir. 1997) (16 to 20 years before trial); *United States v. McDonald*, 53 M. J. 593, 594-95 (Navy-Marine Ct. Crim. App. 2000) (15 to 16 years before trial); *United States v. Eagle*, 137 F.3d 1011, 1015-16 (8th Cir. 1998) (10 years); *United States v. LeCompte*, 131 F.3d 767, 768-70 (8th Cir. 1997) (8 to 10 years). The evidence offered here is so close in manner to the conduct charged that it is far less likely to contribute to an improperly-based jury verdict.

The testimony will not consume a great deal of time.  The admissibility of the other acts involving JP include testimony from witnesses already scheduled to testify related to allegations involving RP.  The additional testimony will take no more than an hour or two of the scheduled three day trial.  The evidence, while prejudicial, is no more prejudicial than the allegations that are central to this case, namely that the defendant sexually exploited his own daughter.  The 937 images and 21 videos of suspected child pornography that will be published to the jury graphically display the genitals of young children. Therefore, the prejudicial effect of acts of molestation with JP will be minimal given the other evidence central to this matter.

## II.  Alternatively, the Sexual Molestation of JP is admissible under Rule 404(b)

In addition, the sexual molestation of JP, may properly be admitted under Fed. R. Evid. 404(b) to establish the defendant's motive, method, intent, knowledge and to identify the defendant as the producer and possessor of RP's pornographic images.

*A. The prior acts establish the motive, method, intent and knowledge*

In *United States v. Sebolt*, 460 F.3d 910 (7th Cir. 2006), the court upheld the admissibility of the defendant's statement through chat logs that he sexually molested a young male relative in the past. *Id* at 917.  The court stated, "[p]rior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of defendant's motive to commit a charged offense involving sexual exploitation of children." *Id.* (citing *United States v. Cunningham*, 103

F.3d 553, 556 (7th Cir. 1996); *See also United States v. Courtright* 632 F.3d 363, 369, (7th Cir. 2011) (a prior instance of sexual misconduct with a minor tends to establish a motive for inducing another minor to take the pictures so that defendant could again achieve sexual gratification with a minor.)  The court also stated that this evidence "may serve to identify the defendant to the crime." *Sebolt,* 460 F.3d at 917.

In this case, evidence that defendant sexually molested and posed JP for sexually explicit photographs establishes the defendant's motive and intent for photographing RP.  Central to this case will be the question of whether the images of RP were taken with the purpose of sexually exploiting her, lasciviously exhibiting her genitals or instead were artistic modeling photos.  The defendant's prior sexual relationship with a young, vulnerable family member and photographing her directly addresses this issue and is therefore relevant and helpful to the jury.  In addition, the defendant's method of disguising his prurient interest as "art" both with JP (writing a book) and RP (taking "artisitic/modeling" photos) shows his knowledge that his manipulations can be successful in inducing and enticing a minor to engage in activities for his sexual pleasure.  The defendant initially denied he took the pictures, therefore, if he continues with this theory, his identity can also be established through linking him with the other acts and ruling out other family members.

   B.  *The prior acts are similar enough and close enough in time to be relevant.*

With each victim, the defendant began with touching and sexual comments.  The defendant directed, coerced and used both victims to pose while he photographed them in a sexual manner.  The defendant manipulated and coerced both victims with threats, violence, and by convincing them that they were participating in something condoned by religion or art.  That the defendant was able to proceed further with his sexual pursuit of JP does not make his conduct with RP dissimilar.  "[s]imple differences in the type of conduct or charge at issue cannot defeat the similarity requirement." *United States v. Long*, 86 F.3d 81, 84 (7th Cir. 1996).  A recent Seventh Circuit decision re-emphasizes this proposition.  In *United States v. Courtright*, the defendant was charged with production, possession, and receipt of child pornography.  632 F.3d 363, 369-370 (7th Cir. 2011).  The production count stemmed from the defendant's taking explicit photos of a 14-year-old girl. *Id*. at 366-367.  At trial, the district court permitted the government to introduce uncharged evidence of the defendant's prior sexual assault of another victim, who the defendant assaulted during the course of a photo shoot. *Id*.

In reviewing the case for admissibility under Rule 404(b), the court agreed that the evidence was sufficiently similar, saying:

> Admittedly, there was a distinction between the two crimes – in the first, [the defendant] actually assaulted the victim during the course of the photo shoot, while in the second he only encouraged her to touch herself in an explicit manner while taking the photographs.

22

*Id.* at 369-370. Similarly in this case, that the defendant advanced his sexual activities with JP all the way to intercourse and lascivious photography, does not suggest the other crime evidence was dissimilar. Rather, the evidence as a whole shows a continuing similar pattern of conduct with the minors in his home.

While the time between JP's abuse and the charged offense is 18 years, the Seventh Circuit has consistently found longer periods of time sufficiently "close enough." In *United States v. Julian,* the Court of Appeals upheld the admissibility of conduct that occurred over 12 years prior to the charged conduct and found that "the legislative history indicates that Congress intended for the lapse of time between the prior and charged offenses to pose no categorical bar to the admission of the prior assault, but rather that it represent a factor that the jury may consider in assessing the probative force of the prior assault." 427 F.3d 471, 486 -487 (7th Cir. 2005); *See also United States v. Wimberly*, 60 F.3d 281 (7th Cir. 1995) (13 years); *United States v. Polichemi*, 219 F.3d 698 (7th Cir. 2000) (10 years). The Court in *Julian* also noted that the rule itself "establishes no time limit on the admissibility of prior offenses, *cf.* Fed.R.Evid. 609(b) (establishing presumption against admission of a witness's prior conviction if more than 10 years old)." *Id.*

C. *The evidence is sufficient to support a jury finding that the defendant committed the similar acts.*

It is well established that the testimony from the victim herself, as an eyewitness, meets the threshold of sufficiency for the admission of other acts evidence. *See Long*, 86 F.3d at 85; *United States v. Curry*, 79 F.3d 1489, 1496 (7th Cir. 1996).  Here, the Court has the testimony of JP along with the defendant's admissions and lack of denials to other witnesses corroborating JP's testimony.

D.    *The probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.*

The Seventh Circuit has "emphasized that most relevant evidence is, by its very nature, prejudicial, and that evidence must be unfairly prejudicial to be excluded. Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Curry*, 79 F.3d at 1496 (quoting *United States v. Pulido*, 69 F.3d 192, 201 (7th Cir. 1995).

The essential question at trial will be to determine whether the defendant produced child pornography.  The government does not anticipate that the defendant will deny he took the images of RP (although he initially denied that he took any nude or inappropriate pictures of RP during his interview with Detective Morrow) based on recent discussions with counsel, the government anticipates the defense theory will be

24

central to the issue of lasciviousness of the images.  The crux of that determination will weigh on whether the defendant's use of the minor, RP, was for sexually exploitive purposes.  Based on this defense, as argued *supra*, the prior acts are necessary to refute his specific defense.  The prior sexual molestation of JP is necessary for the jury to properly understand the nature and circumstances of the charged conduct, to assess the credibility of the witnesses, and to determine the motive, method, intent and knowledge of the defendant.[3]  Finally, the Court can issue limiting jury instructions at an appropriate time to guide the jury in the appropriate use of this evidence.  The Seventh Circuit has often recognized that  "limiting instructions are effective in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence." *United States v. Denberg*, 212 F.3d 987, 994 (7th Cir. 2000).

<div style="margin-left:40%">

Respectfully submitted,

JAMES A. LEWIS
UNITED STATES ATTORNEY

s/Elly M. Peirson
Elly M. Peirson, IL Bar No. 6298075
Assistant United States Attorney
201 S. Vine Street, Suite 226
Urbana, Illinois 61802
Telephone:  (217) 373-5875
Fax:  (217) 373-5891
elly.peirson@usdoj.gov

</div>

---

[3]The government reserves the opportunity to argue that the other acts establish the defendant's identity, should the defendant argue he did not take the pictures of RP.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 15, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> James Elmore
> Elmore & Reid
> 808 South Second Street
> Springfield, Illinois 62704

<div style="text-align:right">

s/Elly M. Peirson
Elly M. Peirson, IL Bar No. 6298075
Assistant United States Attorney
201 S. Vine Street, Suite 226
Urbana, Illinois 61802
Telephone: (217) 373-5875
Fax:  (217) 373-5891
elly.peirson@usdoj.gov

</div>

26