IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 09-30107 |
| | ) | |
| JEFFREY PRICE, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

The Court now considers the Government's Notice of Intent to Introduce Evidence of Other Acts of Child Molestation.  See d/e 26 (the Notice).  For the reasons stated below, molestation evidence offered under the Notice will be DENIED.

FACTS

The facts, as alleged in the Notice are as follows.  On September 9, 2009, the Sangamon County Child Advocacy initiated an investigation after a 16-year old female child, RP, was referred to them by her

1

physician for alleged sexual and physical abuse by Defendant Jeffrey Price ("Price"). During the interview, RP stated that when she was around 10 to 12-years old, Price took photographs of her both nude and wearing her mother's lingerie, specifically thong panties. Most of the photographs were taken in her parent's bedroom in Sangamon County, Illinois. RP also stated that Price had physically abused her with a belt and his hands.

Additionally, RP disclosed that she began menstruating at age 12 during the same time period that Price photographed her. Price showed her how to use a tampon by inserting his fingers inside of her vagina. RP said he had a tampon in his hand and she is not sure why he inserted his fingers inside of her. RP also said that when she had a yeast infection Price inserted the medicine inside her vagina. RP said she asked Price, whom she lived with, about going to the doctor to learn how to do a breast self-examination. Price responded by instructing RP to pretend that he was the doctor so he could do the exam. She said that on one occasion, Price showed her how to do an exam, and she demonstrated

this by making a circular motion around her breasts with her hand.

    RP reported that Price told her often that she was pretty and sexy and she had a nice body. RP said that Price wanted to show her how to masturbate and wanted to buy her sex toys to help her accomplish the masturbation. RP disclosed that Price asked her if she would scream and make a big deal about it if he came into her room in the middle of the night and tried to have sex with her or would she just pretend to be asleep. RP said she told Price that she would scream and make a big deal about it because it was not right. RP stated Price offered to have sex with her and told her he could teach her some things if she wanted to know. RP said Price offered to perform oral sex on her and told her, if she wanted to try it, she could perform oral sex on him. RP said that Price has never touched her with anything other than his hands and has never forced himself on her. RP said the incidents with Price stopped at the point he found out she had lost her virginity. RP said she asked him why he was mad and he told her he was kind of jealous because he wished she had lost her virginity with him.

On September 11, 2009, Department of Children and Family Services ("DCFS") Investigator Misty Hatcher and Detective Paula Morrow with the Springfield Police Department interviewed Price. During the interview, Price acknowledged his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and he agreed to waive those rights.

Price stated that there was a prior DCFS investigation regarding inappropriate photographs of RP in 2004. Price said several people made comments to him that RP could be a model. He said RP was a very pretty young girl. Price explained that he had taken RP to Carlinville and met with a modeling agency from St. Louis. He said the agency wanted him to purchase a portfolio which was very expensive. Price decided to try and create a portfolio of RP himself. Price and RP's mother dressed RP in "cute outfits" and poses trying to build a portfolio. Detective Morrow asked Price if he had taken any nude pictures of RP. He sighed and stated, "Not to my recollections, not that I remember." When asked if he had taken any pictures of RP in lingerie, he said, "I may have, with

4

her dressing up with her mom or her playing dress up," but he could not recall any specific details, other than that RP was 10 years old at the time. Price denied posing nude with RP.

Detective Morrow asked Price if he had destroyed all of the photographs of RP. Price said the photographs were digital and he had a computer that crashed so he had no way of recovering them. Price consented to the search of his Dell Inspiron laptop computer, Serial No 36WY0D1, on that same day. On October 13, 2009, Detective Morrow spoke with RP's biological mother, Price's ex-wife. RP's biological mother told Detective Morrow that she recalled Price taking a photograph of her and RP while both females were nude and sitting on stools in their bedroom. RP would have been about 9-years old at that time. RP's biological mother also told Detective Morrow that Price told her he wanted to take the picture for an "art" project he was working with on the internet.

During the search of Price's residence, law enforcement officers located several commercial movies of child erotica, involving minors with

5

sexually suggestive themes and depictions. Senior Special Agent ("SSA") Michael Mitchell with Immigration and Customs Enforcement conducted a forensic examination of Price's Dell Inspiron laptop computer. SSA Mitchell recovered 21 movies and 937 images of minors engaged in sexually explicit conduct on Price's laptop computer of suspected child pornography. The majority of the images located by SSA Mitchell were found in the "Recycle Bin," having been last accessed by the computer user the morning of September 11, 2009—the day of Price's interview with Detective Morrow.

In addition, SSA Mitchell located several images of RP. One of the images depicts RP on a bed completely nude facing the camera. In the picture, RP is posed in a sexually coy position but her hands cover some of her breast area. She has no apparent breast development and based on her body size, she appears to be approximately 9 to 11-years old. Another image depicts RP completely nude next to an adult female who is also completely nude. This image is a full frontal depiction of RP and shows no breast development or pubic hair. There were several images of

RP posed and dressed partially in lingerie.  One such image depicts RP on a bed on her stomach.  She is wearing only white thong-like panties and white thigh high stockings.  Her buttocks are exposed, she has no visible breast development, and she is looking at the camera in a sexually suggestive manner.  SSA Mitchell determined that these images were located on the Dell Inspiron laptop hard drive produced in the "thumbcache_256.db" file.  This file was last accessed on September 11, 2009, the morning of Price's interview with Detective Morrow.

    A user with Windows Vista Operating System who previews or views images causes those images to be stored on the user's computer in a centralized location on the system.  This provides the system with access to images independent of their location.  The location that the system creates are named "thumbcache_xxx.db".  They are numbered according to the size of the images—*i.e.,* 256kb, 512kb, 1024kb, 2048kb, etc.  The images are recoverable through computer forensics. The hard drive in the Price's Dell Inspiron laptop was manufactured in China.  SSA Mitchell also located peer to peer file sharing software on Price's computer as well

as anti-computer forensic software designed to eliminate traces of evidence. This program was set to automatically empty the recycle bin of its contents on a regular basis, however, this feature had not been run on the morning of Detective Morrow's interview with Price.

The images of RP were submitted to the National Center for Missing and Exploited ("NCMEC") children as an identified series of child pornography. NCMEC has since located at least 40 additional investigations worldwide where RP's images have been recovered. These investigations revealed that the individuals who received RP's images did so primarily through peer to peer file sharing networks via the internet.

On November 18, 2009, a Grand Jury in Peoria, Illinois charged Price with a three-count indictment. Count One charged Price with Production of Child Pornography occurring on or between October 2002, through October 2004, pursuant to 18 U.S.C. §§ 2251(a) and (e). Count Two charged Price with Possession of Child Pornography on or about September 11, 2009, pursuant to 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). Count Three seeks forfeiture, pursuant to 18 U.S.C. § 2253.

On May 5, 2010, a Grand Jury in Springfield, Illinois charged Price with a three-count superseding indictment. Count One charged Price with Production of Child Pornography occurring on or between October 2002, through on or about September 11, 2009, pursuant to 18 U.S.C. §§ 2251(a) and (e). Count Two charged Price with Possession of Child Pornography on or about September 11, 2009, pursuant to 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). Count Three charged Price with Access with Intent to View Child Pornography on or about September 11, 2009, pursuant to 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). The superseding indictment also contains a forfeiture notice. The factual basis for Counts 1-3 involve the images of RP. Count Two also refers to the additional 21 movies and 937 images of minors engaged in sexually explicit conduct on Price's laptop computer.

The Government now seeks leave to introduce evidence of Price's specific acts during trial. The specific acts include Price's alleged molestation of his younger sister, JP. During the instant case's investigation, several witnesses—including RP—reported that Price ha

engaged in sexual acts with JP.  Detective Morrow then located and interviewed JP.  JP disclosed, that when she was approximately 5-years old, Price—who was five years older than she—took her and another sister to a room in their house in Bloomington, Illinois and asked to see their private parts.  There was some touching and pointing with hands during this incident.  JP also reported that when she turned 8-years old, the abuse intensified.  Price had his own room in the family's new home in Springfield, Illinois, and had engaged in oral sex with JP on multiple occasions from the time she was 8 until she was 14-years old.  JP disclosed that, when she was 12-years old, Price "took her virginity."  She remembers feeling pain and bleeding as a result of this incident.  She also reported that she did not begin menses until two years later, when she turned 14-years old.

JP stated that Price had both bribed and threatened her, giving her "privileges" the other siblings did not have, such as hanging out in her room or listening to her stereo.  When JP told him she was going to tell their parents, he said his parents already knew and assured her that their

sexual intercourse was condoned by the Bible.

Furthermore, Price told JP that he was writing a "steamy sex novel" and he was using her as the main character in the book. Price told her he needed to perform various sex acts with her so he could see how to write his book. JP also recalled Price directing her to pose while he took sexually explicit photographs of her. JP observed these photographs years later in a file cabinet along with a video of her. Price advised JP that images of child pornography are traded on the internet through web sites. Price explained that the only way to access those sites to download images was to offer photographs to trade. JP requested that the Price give her the images and videos he had taken of her, but he refused saying they were his "precious possessions."

JP stated that she confronted Price about the years of sexual abuse he perpetrated upon her after attempting suicide as an adult and realizing she needed professional intervention. Price agreed to attend therapy with her and admitted to all of the sexual abuse during the sessions. The Notice states that additional witnesses can corroborate the sexual abuse

11

JP suffered. Price allegedly admitted to Renee Hale, a family member, that he had sexual "relations" with a family member when he was 12-years old, and that he had a sexual relationship or encounter with his younger sister. When Price's ex-wife, Robin Price, confronted Price about the sexual abuse he had perpetrated upon JP, he stated, "all the kids had done stuff."

Detective Morrow asked Price during his September 11, 2009 interview about any sexual contact he had with this younger sister. Price minimized but he did not deny the conduct, stating it was "just kids playing around." Price's father, Larry Price, stated Price did not deny what he did to JP, instead Price stated he forgot about the incidents.

Price objects to the admission of evidence under Rule 414 or 404(b) as to his alleged molestation of JP.[1] The Government has replied to Price's objections. As such, the matter is ripe for the Court to rule.

## EVIDENTIARY STANDARDS

---

[1] The Government has not given notice that it intends to introduce evidence that Price molested RP. Upon proper notice, such evidence may be admissible under Rule 404(b). However, since no notice has been given concerning RP, the Court does not address this issue.

Federal Rule of Evidence 414 provides that, in a criminal case in which the defendant is accused of child molestation, evidence of past offenses of child molestation is admissible to the extent these offenses are relevant.[2] For the purposes of Rule 414, "child" refers to anyone under

---

[2] In full, Rule 414—Evidence of Similar Crimes in Child Molestation Cases—states:

(a) In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.

(b) In a case in which the Government intends to offer evidence under this rule, the attorney for the Government shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least fifteen days before the scheduled date of trial or at such later time as the court may allow for good cause.

(c) This rule shall not be construed to limit the admission or consideration of evidence under any other rule.

(d) For purposes of this rule and Rule 415, "child" means a person below the age of fourteen, and "offense of child molestation" means a crime under Federal law or the law of a State (as defined in section 513 of title 18, United States Code) that involved—

(1) any conduct proscribed by chapter 109A of title 18, United States Code, that was committed in relation to a child;

(2) any conduct proscribed by chapter 110 of title 18, United States Code;

(3) contact between any part of the defendant's body or an object and the genitals or anus of a child;

the age of fourteen.  See Fed.R.Evid. 414.

Rule 404(b) provides that evidence of other acts is inadmissible "to prove the character of a person in order to show action in conformity therewith".  In that regard, crimes "that have not led to convictions are classic candidates for exclusion under [Rule] 404(b)." Gregory v. Oliver, No. 00 C 5984, 2003 WL 1860270, at *1 (N.D.Ill. Apr.9, 2003).  However, conduct may nevertheless be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See Fed.R.Evid. 404(b); see also, United States v. Hicks, 635 F.3d 1063, 1069 (7th Cir. 2011).  When deciding if evidence can be properly admitted under Rule 404(b), courts consider the following factors: "(1) the evidence is directed toward establishing a matter in issue other than the defendant's

---

(4) contact between the genitals or anus of the defendant and any part of the body of a child;

(5) deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on a child; or

(6) an attempt or conspiracy to engage in conduct described in paragraphs (1)-(5).

propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, as required by [Federal Rule of Evidence] 403." See Hicks, 635 F.3d at 1069; see also United States v. Courtright, 632 F.3d 363, 369 (7th Cir. 2011).

## ANALYSIS

Price is charged with producing child pornography, possessing child pornography, and accessing with intent to view child pornography. See Superseding Indictment, citing 18 U.S.C. §§ 2251(a) and (e); 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). Because Price is not charged with child molestation, evidence of prior molestations is inadmissible under Rule 414. Furthermore, United States v. Hawpetoss, 478 F.3d 820, 824 (7th Cir. 2007)—one of the cases the Government cites as principal support for admitting evidence of past sexual abuse—is inapposite. In

15

Hawpetoss, Rule 414 evidence was admitted in a case where a defendant was charged with commission or attempted commission of sexual offenses of children under the age of twelve. Id. at 821, 823-25, citing 18 U.S.C. §§ 1153(a), 2241(c), and 2242(1). As Price is not charged with molestation, Rule 414 is not a basis for admitting evidence. The same difficulty prevents the Government from relying on United States v. Julian, 427 F.3d 471, 486 (7th Cir. 2005) and United States v. Burt, 495 F.3d 733, 741 (7th Cir. 2007) because admissibility of molestation evidence in those cases was also premised on Rule 414.

As for the admissibility of molestation evidence under Rule 404(b), that rule provides that prior bad acts may be admitted into evidence to prove motive, method, intent, or knowledge. Id. In United States v. Sebolt, 460 F.3d 910, 917 (7th Cir. 2006), the Seventh Circuit stated that: "Prior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children." Id., citing United States v.

16

Cunningham, 103 F.3d 553, 556 (7th Cir. 1996).  Evidence of a defendant's prior molestation of a young relative is, therefore, admissible to prove motive and identity.  Id.  Therefore, if Price offered a defense contending that his photographic motive was based on something other than lasciviously exhibiting genitalia—*i.e.* Price merely took pictures as part of some artistic endeavor—the Government would be allowed to introduce evidence of molestation to try to show that Price's true motive was prurient.  See Burt, 495 F.3d at 741 (7th Cir. 2007) (affirming admission of prior molestation under Rule 404(b) as evidence to show pictures were intended to elicit a sexual response and were not created for a legitimate purpose).

However, Sebolt, also stated that "molestations must have 'occur[red] close enough in time to the crime[s] charged to be relevant to [a defendant's motive].'"  Id., citing United States v. Loyd, 71 F.3d 1256, 1264 (7th Cir. 1995).  While the Government asserts that Julian eliminated this Rule 404(b) requirement, Julian only stated that the lapse of time between prior and charged offenses was not a bar to admission of

17

*Rule 414 evidence.* See Julian, 427 F.3d at 486 (emphasis added); see also, United States v. Meacham, 115 F.3d 1488, 1494–95 (10th Cir.1997) (affirming the admission under Rule 414 of prior molestation of stepdaughters that occurred roughly 30 years before charged offense). Therefore, temporal proximity remains a necessary consideration under Rule 404(b). See Sebolt, 460 F.3d at 917.

Here, the Government contends that Price's molestation of JP ended in 1984 and his molestation of RP began in 2002. As such, there is an 18-year gap between Price's prior molestation of JP and the offenses charged in connection with RP. In United States v. Wimberly, 60 F.3d 281, 285 (7th Cir. 1995), the Court of Appeals found that where molestation which occurred 13 years prior to a charged offense, it "weighed against admissibility." Although other factors allowed evidence of the prior molestation to be admitted under Rule 404(b), those factors are either not present or not argued here. See Wimberly, 60 F.3d at 285 (discussing "virtually identical nature" of past and current offenses as well as defendant's "crucial" confession to psychotherapist). Due to the

18-year lapse between Price's past and current offenses, the lack of temporal proximity between his molestation of JP and the issuance of the Superseding Indictment, the second factor in the Rule 404(b) analysis weighs dispositively against admitting evidence of JP's molestation. See Sebolt, 460 F.3d at 917; Wimberly 60 F.3d at 285. As such, the Court need not address the remaining Rule 404(b) considerations.

THEREFORE, the Government's Notice of Intent to Introduce Evidence of Other Acts of Child Molestation (d/e 26) is DENIED. The Government is prohibited from introducing evidence concerning Price's molestation of JP.

IT IS SO ORDERED.

ENTERED: July 11, 2011

FOR THE COURT BY:  s/ Sue E. Myerscough
　　　　　　　　　　　　　　　SUE E. MYERSCOUGH
　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE