IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CR-30107 |
| | ) | |
| JEFFREY PRICE, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America by its attorneys James A. Lewis, United States

Attorney for the Central District of Illinois, Elly M. Peirson, Assistant United States

Attorney, and Alexandra R. Gelber, Assistant Deputy Chief, U.S. Department of Justice,

hereby submits this memorandum in support of sentencing.  For the reasons stated

below, the United States respectfully requests this Court impose a sentence of 480

months, to be followed by lifetime supervised release:

I. **Defendant's Objections to the PSR**

The defendant makes numerous objections to the Presentence Investigation

Report ("PSR"), most of which are contrary to the verdict or are unsupported in the

record, and none of which have any merit.  To the extent the defendant claims that

factual statements in the PSR are inaccurate, he bears the burden of providing evidence

to the contrary.  *United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007).

Paragraphs: 12, 14-26, and 64: The defendant objects to statements in the PSR

indicating that he had a sexual relationship with J.P., a female biological relative, when

she was a child.  In addition to the evidence cited in the PSR and Addendum, the United States is prepared to offer testimony at sentencing by a Department of Homeland Security/Homeland Security Investigations Agent in support of the factual statements concerning the defendant's sexual abuse of his relative.[1]

The defendant also argues that, assuming he had abused J.P., the criminal activity cannot support application of U.S.S.G. § 4B1.5(b) because it is too remote in time and lacking in similarity to his offenses of conviction.  As noted in the PSR, the Seventh Circuit has affirmed pattern enhancements under comparable circumstances.  Specifically, in *United States v. Lovaas*, 241 F.3d 900, 901 (7th Cir. 2000), the defendant was convicted of transporting and possessing child pornography.  The Court of Appeals affirmed the application of the comparable pattern enhancement in U.S.S.G. § 2G2.2(b)(4) based on the defendant's sexual abuse of a minor 26 prior to the offense of conviction.  241 F.3d at 903-904.  In this case, the defendant sexually molested two different female biological relatives when they were children.  Thus, the criminal behavior supporting the pattern enhancement here is even more closely related than

---

[1] Although the United States is prepared to offer testimony at sentencing, it is not required to do so.  In the Seventh Circuit, a district court "may rely on the PSR in ruling on factual issues in the sentencing context as long as the PSR is based upon sufficiently reliable information. When the court relies on information contained in the PSR at sentencing, it is the defendant's burden to show that the PSR is inaccurate or unreliable. When a defendant has failed to produce any evidence calling the report's accuracy into question, a district court may rely entirely on the PSR." *United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007).  Contrary to the defendant, who asserts that he "will not accept representations made by J.P. to officers unless she is produced for testimony at the sentencing hearing," R.180 at 14, courts may consider hearsay evidence at sentencing so long as it is not devoid of any indicia of reliability.  *United States v. Mitchell*, 635 F.3d 990, 993 (7th Cir. 2011).

that in *Lovaas*.  In addition, the length of time between the instances of criminal behavior in this case is comparable to that in *Lovaas*.  For those reasons, the defendant's objection should be denied.[2]

In his sentencing memorandum, the defendant argues that his abuse of J.P. "does not constitute relevant conduct for purposes of the Sentencing Guidelines."  R.180 at 13. U.S.S.G. § 4B1.5(b) states that the defendant's guideline range should be increased by five levels if he has a qualifying offense and he "engaged in a pattern of activity involving prohibited sexual conduct."  A pattern of activity is defined in Application Note 4(B) as:

> (I) <u>In General</u>.—For purposes of subsection (b), the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor.

> (ii) <u>Occasion of Prohibited Sexual Conduct</u>—An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) *without regard to whether the occasion (I) occurred during the course of the instant offense*; or (II) resulted in a conviction for the conduct that occurred on that occasion.

(Emphasis added).  Thus, by its very terms U.S.S.G. § 4B1.5(b) is expansive, and includes conduct that is not temporally bound to the conduct of conviction.  *See United States v. Corp.*, --- F.3d ---, 2012 WL 399229, *1, *10-11 (6th Cir. 2012) (affirming application of 4B1.5(b) in part on conduct that was basis for a separate case 10 years prior to the conduct of his instant conviction).

---

[2] As discussed further below, the United States maintains that enhancement in U.S.S.G. § 4B1.5(b) is independently triggered by the defendant's exploitation of R.P. on multiple occasions.

Paragraph 13:  The defendant denies that he described his dressing of R.P. in lingerie and taking photographs of her as playing "dress up."  Because he cites no evidence which contradicts the statement in paragraph 13, his objection should be denied.

Paragraph 14:  The defendant objects to the reference to the recorded jail call between him and his wife Patricia Price, arguing that is taken out of context.  The jail call was offered into evidence at trial, and the defendant took the stand to explain his statements.  The evidence in the record establishes that the statement is not taken out of context, and his objection should be denied.

Paragraph 15:  The defendant objects to this paragraph, maintaining that he did not voluntarily relinquish his laptop and that he was under duress.  The defendant's objection is foreclosed by the Court's order denying his motion to suppress, in which he made the same arguments. *See* R.80.  Therefore, his objection should be denied.

Paragraph 16:  The defendant objects to this paragraph, arguing that the commercial movies of child erotica were found in his son's room and on his son's laptop.  He cites no evidence in the record indicating that these statements are inaccurate, and so his objection should be denied.[3]

Paragraph 17:  The defendant quibbles with the details of this paragraph, claiming that R.P. was 12, not 9, in the photograph he took of her with her mother while both were naked, and that they were standing, not sitting on stools.  The United States

---

[3] At trial, the defendant's son did admit that he had downloaded adult incest material to his computer. He did not admit he obtained or possessed material depicting child erotica.

maintains that this is a distinction without a difference, as the conduct is equally alarming in any event. Furthermore, the defendant cites no evidence in the record in support of his objection, and so it should be denied.

Paragraph 19: The defendant objects to this paragraph, claiming that he saw those images for the first time the day he attempted to destroy them. The defendant advanced the same argument at trial, which was rejected by the jury. Evidence was introduced at trial concerning the defendant's attempt to copy the material to a CD, and that the images and videos had been sorted into user-created folders. Because this objection is foreclosed by the jury verdict, it should be denied.

Paragraph 21: The defendant objects to this paragraph, arguing that the images of R.P. do not depict sexually explicit conduct. This objection is contrary to the jury's verdict as indicated on the special verdict form, in which it specifically indicated which images of R.P. it found to constitute child pornography. Therefore, the objection should be denied.

Paragraph 22: The defendant objects to this paragraph, claiming that Clean Disk Security is not "designed" to eliminate evidence. The United States suggests changing the word "designed" in this paragraph to "used."

Paragraphs 30-31: The defendant objects to these paragraphs, claiming that he did not attempt to cause R.P. to recant her allegations. His objection is contrary to statements and testimony provided by witnesses. He cites no evidence in the record to support his objection, and so it must be denied.

Paragraphs 39 and 48:  The defendant objects to these paragraphs, claiming that R.P. was 12 at the time the photographs were taken.  This is contradicted by his own testimony at trial, in which he repeatedly said R.P. was 11 in all of the photographs at issue.  Therefore, his objection should be denied.

Paragraphs 45 and 54:  The defendant objects to these paragraphs, which provide an enhancement for obstruction of justice based on his attempts to get R.P. to recant her allegations.  His objection is contrary to statements and testimony provided by witnesses.  He cites no evidence in the record to support his objection, and so it must be denied.

Paragraphs 36 and 47-55:  The defendant objects, arguing that the sentencing guideline for his possession offense should be calculated pursuant to U.S.S.G. § 2G2.2 instead of U.S.S.G. § 2G2.1.  *See also*, R. 180 at 12-13.  U.S.S.G. § 2G2.2(c)(1) states:

> If the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, apply §2G2.1 (Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertisement for Minors to Engage in Production), if the resulting offense level is greater than that determined above.

In this case, the cross-reference to 2G2.1 applies, as the defendant caused R.P. to engage in sexually explicit conduct for the purpose of taking photographs of the conduct.  Contrary to the defendant, R.180 at 13, application of this cross-reference is not discretionary.  *See United States v. Dawn*, 129 F.3d 878, 881-82 (7th Cir. 1997) (the

possession guideline compels cross-referencing to the production guideline when the offense involves the production of child pornography).[4]

Paragraph 64:  The defendant objects to this paragraph, denying he had ever abused R.P.  This is contrary to her testimony, in which she described how the defendant had inserted his fingers into her vagina, touched her clitoris, and offered to teach her about sex, among other things, to say nothing of all the sexually explicit photos he took of her on numerous occasions.  The defendant's objection should be denied.

Section 4B1.5(b) of the Guidelines provides that "[i]n any case in which the defendant's instant offense of conviction is a covered sex crime . . . and the defendant engaged in a pattern of activity involving prohibited sexual conduct . . .[t]he offense level shall be 5 plus the offense level determined under Chapters Two and Three.  A "covered sex crime" for purposes of this enhancement is an offense against a minor

---

[4] The PSR correctly indicates that the two calculations under 2G2.1 (one for the production count and one for the possession count) should not group, as the possession count includes different transactions and additional victims.  *See* PSR ¶¶ 18-20, 56-60.  According to U.S.S.G. § 3D1.2, grouping is appropriate when the counts involve the same victim.  It then follows that grouping is not appropriate where, as here, the counts involve different victims.  *See United States v. Liddell*, 543 F.3d 877, 881 (7th Cir. 2008) (district court properly declined to group counts when conduct in each group did not involve the same victim or transaction).  The defendant argues that his production and possession convictions are based on the same conduct:  "Given the factual basis of the two charges for which this defendant has been found guilty, the court should see that the events in question arose from the same factual setting."  R.180 at 12.  This is patently contrary to the evidence, which included extensive computer forensic testimony establishing the defendant's possession of over 500 child pornography files–none of which the defendant produced.  Furthermore, the defendant's possession of child pornography continued for years after he produced the images of R.P.

which would violate Chapter 110 of the United States Code, specifically, production of child pornography as prohibited by 18 U.S.C. § 2251.

The Commentary defines "prohibited sexual conduct" for application of § 4B1.5(b) as "any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B)" which includes producing child pornography (an offense under Chapter 110 of the United States Code), as well as conduct that would violate the laws contained in Chapter 109A if the conduct had occurred in federal jurisdiction.  Chapter 109A prohibits sexual acts and sexual contact with children under the age of twelve, to wit:

> (2)(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
>
> (2)(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;
>
> (3) the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

*See* 18 U.S.C. §§ 2241(c) (prohibiting sexual acts with a minor under the age of 12), 2244(a)(5) (prohibiting sexual contact with a minor under the age of 12), 2246(2)(C) and (D) (defining sexual act), 2246(3) (defining sexual contact), 2426(b)(1)(A) or (B) (cross-referencing to offenses in Chapter 109A).

8

The Commentary for § 4B1.5(b) provides that "the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor."

Because the defendant engaged in a pattern of activity involving prohibited sexual conduct on several occasions with both R.P. and J.P., Probation properly applied the pattern of activity enhancement under § 4B1.5(b)(1).

## II.   Defendant's Sentencing Arguments

The defendant requests a downward variance to the minimum required sentence of 15 years. R.180 at 16.  He also asks, as part of the downward variance, that the sentences on his two counts run concurrently, instead of consecutively.  *Id*. at 11-12. The arguments made by the defendant are unremarkable, have been rejected by several courts, and should be rejected here.

### A.   *Physical Condition*

The defendant argues that he "suffers from a multitude of chronic and sustained medical problems," and that incarceration would exacerbate his medical condition.  R. 180 at 10-11.  His argument is without merit, and should be disregarded.

According to U.S.S.G. § 5K2.0(a)(1)(B), unlike for other crimes, mitigating circumstances are not generally to be considered a basis for departure for sentencing in child crimes and sexual offenses.  *See also*, 18 U.S.C. § 3553(b)(2) (limiting bases for downward departures for crimes against children).  Furthermore, U.S.S.G. § 5H1.4 provides:

Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, *if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines.* An *extraordinary* physical impairment may be a reason to depart downward; <u>e.g.</u>, in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

Drug or alcohol dependence or abuse ordinarily is not a reason for a downward departure. Substance abuse is highly correlated to an increased propensity to commit crime. Due to this increased risk, it is highly recommended that a defendant who is incarcerated also be sentenced to supervised release with a requirement that the defendant participate in an appropriate substance abuse program (<u>see</u> §5D1.3(d)(4)). If participation in a substance abuse program is required, the length of supervised release should take into account the length of time necessary for the probation office to judge the success of the program.

(Emphasis added.)

Although the defendant asks for a downward variance (a sentence below the recommended guideline range), not a downward departure (a reduction in the recommended guideline range), the policy statements in the Sentencing Guidelines counsel that his arguments about his health should be afforded little weight, as his complaints do not take him outside the heartland of cases. Furthermore, his medical conditions did not prevent him from committing these crimes, from sexually stalking R.P. and J.P., and from representing himself at trial. They should not now be used to spare him the consequences of his criminal conduct.

The Seventh Circuit's decision in *United States v. Allday*, 542 F.3d 571 (7th Cir. 2008), is instructive. In that case, the defendant was convicted of receipt of child pornography. 542 F.3d at 572. Although his recommended guideline sentence was 97-

121 months, the defendant requested the minimum sentence of 60 months because "he was 64 years old and suffering from a number of health problems, including sleep apnea that required nightly monitoring with a machine, a heart condition, and diabetes." *Id.* The district court nonetheless sentenced the defendant to 97 months, and the Seventh Circuit affirmed. *Id.* The district court "determined that Allday's age (64) did not warrant a lower sentence, and in fact might make him more dangerous because society may expect him to be 'gentle and trustworthy.' The court also took into account Allday's health problems and concluded that the Bureau of Prisons could adequately treat his 'whole array of problems,' including his sleep apnea and diabetes." *Id.* at 573. Based on the findings of the district court, the Seventh Circuit affirmed the sentence as reasonable. *Id.* at 574.[5] Similarly, in *United States v. Ilgen,* 417 Fed.Appx. 728 (10th Cir. 2011) (unpublished), the defendant argued he should be sentenced to probation because he "suffers from a tremor that worsens with stress and . . . that incarceration would negatively affect his health and well-being." 417 Fed. Appx. at 732-33. He also claimed, as does the defendant here, that he had been diagnosed with anxiety and depression. *Id.* at 730-31 and 733, n.5. The district court nonetheless sentenced the defendant to 78 months in prison for possession of child pornography, finding that despite the defendant's mitigating arguments:

> There still remains the unalterable fact that he carried out and actively supported an illegal industry that treats children like so much garbage,

---

[5] A general description of the medical care offered by the Bureau of Prisons can be viewed at http://www.bop.gov/inmate_programs/health.jsp (last visited on March 7, 2012).

and it is not a nursery that our society is willing to accept.  Just as Mr. Ilgen supported and carried out the policy and practice of victimizing children for perverted satisfaction, I will support and carry out society's strong determination that he does not deserve to be free to live among us without paying the price for his criminal conduct.

*Id*. at 734-35.  The Tenth Circuit affirmed.  *Id*. at 735-37 (noting that the district court found the defendant could receive appropriate treatment in prison).

### B.        *Depression and Anxiety*

The defendant argues that his depression and anxiety also weighs in favor of a downward variance.  Numerous courts have rightly rejected such claims.  For example, in *United States v. Cunningham*, --- F.3d ---, 2012 WL 593110 (6th Cir. Feb. 24, 2012), following his conviction for distribution and receipt of child pornography, the defendant argued for a downward variance at sentencing because:

he only turned to child and adult pornography to cope with his girlfriend's decision to break up with him.  In support of this argument, Defendant obtained a psychological evaluation prior to his sentencing hearing, in which he was diagnosed with Major Depressive Disorder and Dependent Personality Disorder.  At the sentencing hearing . . . defense counsel argued that Defendant used child pornography to cope with those disorders.

2012 WL 593110, *9. The district court rejected his argument, casting

doubt on the pertinence of Defendant's psychological assessment, questioning how Defendant's depression and Dependent Personality Disorder "would lead one in any way to form any interest in child pornography."  In its written opinion, the district court noted the results of Defendant's psychological examination but explained that the psychologist's diagnosis of depression and Dependant Personality Disorder failed "to explain [Defendant's] choice to view child pornography."

*Id.*  The Court of Appeals affirmed, finding that:

Defendant's psychological evaluation sheds little, if any, light on the § 3553(a) factors and, as a result, does not demonstrate his entitlement to a lower sentence.  We have no reason to doubt the accuracy of the report's documentation of Defendant's personal struggles and its diagnoses of depression and Dependent Personality Disorder.  However, as the district court pointed out, Defendant's personal history and psychological conditions do not set him apart from many other individuals who suffer from the same trials and yet do not resort to child pornography.  For that reason, the psychological assessment provided the district court no basis for concluding that Defendants history and characteristics warranted a more lenient sentence, nor any basis for concluding that application of any other § 3553(a) factors warranted a more lenient sentence.

*Id.*  As in *Cunningham*, the Court should reject the defendant's claim here that his mental condition warrants a lower sentence.[6]  *See also*, *United States v. Brooks*, 628 F.3d 791, 798 (6th Cir. 2011) (the court reasoned that the depression did not justify [the defendant's] criminal conduct, and that he should have dealt with his depression in a more positive way); *United States v. Richardson*, 335 Fed.Appx. 258, *3 (3d Cir. 2009)  (unpublished) (defendant's depression did not warrant a downward variance); *United States v. Tanzola*, 416 Fed.Appx. 197, 199 (3d Cir. 2011) (unpublished) (same); *United States v. Finley*, 401 Fed.Appx. 482, 483-84 (11th Cir. 2010) (unpublished) (same); *United States v. Phillips*, 383

---

[6] Unlike in *Cunningham*, 2012 WL 593110, *9, the defendant here does not claim that his depression or anxiety *caused* him to commit his crimes.  Indeed, as his objections to the PSR illustrate, he still maintains his innocence.  Rather, he just argues that his depression and anxiety (which do not mitigate his culpability) should nonetheless mitigate his sentence: "[t]o sentence the Defendant to an unnecessary period of extended incarceration would only serve to exacerbate these mental and emotional health concerns."  R.180 at 11.  If defendant's argument was accepted, then every defendant with depression and anxiety–which are hardly unusual mental health diagnoses–would be entitled to a lower sentence.  *See United States v. Ferron*, 357 F.3d 722, 725 (7th Cir. 2004) (depression and anxiety did not warrant downward departure when the defendant knew right from wrong).

Fed.Appx. 527, *6 (6th Cir. 2010) (unpublished) (downward departure for depression not available in child pornography cases).

### C.    Recidivism

In a single, conclusory sentence, the defendant claims that he "does not have a high likelihood of recidivism." R.180 at 15.  His self-serving and unsubstantiated statement cannot be taken at face value; what defendant at sentencing would ever say anything other than they will not commit a crime again.  Moreover, in this case, the defendant maintains that he has not committed any crimes at all, which if anything puts him at a higher risk of offending again.  In *Cunningham*, the defendant similarly argued that he was at a low risk of recidivism.  The district court was not convinced, explaining that:

> it would find Defendant's recidivism risk higher . . . because, in the court's opinion, Defendant failed to recognize the significance of his own actions . . .  It is clear to the Court that there is some underlying issue that has caused Cunningham to seek out child pornography.  Until Cunningham receives some treatment, discovers that issue, and confronts it, the Court believes he is at a significant risk of reoffending.

*Cunningham*, 2012 WL 593110, *5 (internal quotations and citation omitted).  In the same way, the defendant's claim about his risk of recidivism should not carry any weight.

### D.    Defendant's Contributions to Society and His Family

The defendant's final argument in support of a below guideline sentence is that he has much to contribute to society and to his family, particularly through his intellectual abilities and eloquence.  R.180 at 11, 15.  The defendant's claim that he "loves his family dearly," R.180 at 15, must be understood in light of his conduct at trial,

14

at which he attempted to pin his criminal conduct on two of his children, their friends, and his ex-wife, and relentlessly attempted to ask intrusive and inappropriate questions about R.P's sexual and mental health history even after the Court had excluded such lines of questioning.  His willingness to cannibalize his family to suit his own needs recalls the famous quote, "have you no sense of decency."  As for his intellect, assuming for the sake of argument that his narrative is correct – that he took the photos of the 11-year-old R.P. to advance her modeling career after she saw the movie *Pretty Baby*  – then he clearly lacked the wisdom and judgment to recognize that he should have steered R.P. to a more positive role model than the child prostitute depicted in the movie.

Like the defendant here, the defendant in *Allday* "also argued that his stable work history (41 years as a Union laborer), military service, and first-time offender status all militated in favor of a five-year sentence. Finally, he submitted a number of letters from his step-children and grandchildren, all attesting to the fact that he was a loving and supportive father and grandfather."  542 F.3d at 572.  The district court in that case declined the defendant's invitation to lower his sentence based on his claim that he could be a good citizen.  *Id.*  The Court here should do the same.  *See also, United States v. Maier*, 646 F.3d 1148, 1153, 1156-57 (imposing a guideline sentence in a child pornography case while considering the defendant's history of suffering physical and emotional abuse as a child, very serious mental issues regarding his self-esteem, depression, young age, lack of prior criminal history, family ties and support, intelligence and resourcefulness, military service, and cooperation with government

officials during their investigation); *Ilgen,* 417 Fed.Appx. at 732-33 (declining

defendant's request to be sentenced to probation because "he was a doting father, had

worked for thirty years at the same company (until he lost his job due to his arrest) and

had no criminal history").

## III.    The Sentencing Position of the United States

### A.    Statement of Facts

The evidence introduced at trial showed that the Defendant sexual stalked R.P.

When R.P. was around 11 years old, Price took photographs of her in the home he

shared with R.P.'s mother in Riverton, Illinois.  In some of these photos, R.P. is nude,

and in other photos, Price made R.P. wear pieces of her mother's lingerie.  Price dictated

how R.P. should pose, and focused his photographs on R.P.'s genitals.

The production of the sexually explicit images of R.P. was part of a pattern of the

Defendant's molestation and harassment of her.  On one occasion, Price purported to

give R.P. an anatomy lesson by pointing at and touching R.P.'s genitals, including her

clitoris.  On another occasion, Price purported to show R.P. how to insert a tampon by

pushing his fingers into R.P.'s vagina.  R.P. stated that when she had a yeast infection,

Price applied the medicine on R.P.'s vagina.  On yet another occasion, Price purported

to demonstrate for R.P. how to perform a breast self-exam by groping R.P.'s breasts and

rubbing them in a circular motion.  Price repeatedly offered to have sexual intercourse

with R.P., telling her that he could "teach" her some things.  He also told R.P. that she

was "sexy" and that she had a "nice body."  On one occasion, Price asked R.P. whether

she would resist if he came into her bedroom in the middle of the night and attempted

to have sex with her.  Price suggested that R.P. might lie still and pretend to be asleep.

R.P. told him that she would scream instead.  Price offered to perform oral sex on R.P.

and told R.P. that she could perform oral sex on him.  Price offered to show R.P. how to

masturbate and told her that he wanted to buy sex toys for her.

   The sexually explicit images of R.P. are being circulated on the internet.  At trial,

Detective Chad Gish testified that he found the images of R.P. during an investigation

of an individual in Nashville, Tennessee.  The United States also has evidence that the

images of R.P. have been found in at least 160 other cases across the country.

   At trial, the defendant attempted to establish that R.P. was lying.  Indeed, even

now, he maintains that R.P. did not tell the truth.  In his objection to the obstruction of

justice enhancement, he claims that he was not trying to obstruct justice, he was just

trying to get R.P. to tell the truth.  There are two fundamental problems with the

defendant's theory that R.P. is a liar.  First, the sexually explicit pictures of R.P. exist,

and confirm the truthfulness of her testimony.  Second, the defendant's own words

corroborate portions of R.P.'s testimony.  Among other things, after several attempts at

trial to suggest that others took the photographs, when the defendant took the stand, he

finally admitted that he was behind the camera.  Furthermore, during an interview with

DCFS Investigator Misty Hatcher and Detective Paula Morrow on September 11, 2009,

Price admitted that when R.P. was about 10-years-old, he dressed her up in "outfits,"

including lingerie, and took photographs of her.  Following the defendant's arrest and

detention in this case, the jail's phone system recorded a call between him and his wife,

Patricia.  During the call, Price told Patricia that he got the idea of taking nude photos of

R.P. from a website.  Specifically, Price stated that the website led him to believe that he could earn money by publishing naked photos of R.P. on the internet. Price claimed that, at the time he took the photos of R.P., he "didn't have a penny to [his] name."  The defendant's attempts to cast R.P. as a liar is particularly vicious in light of the evidence to the contrary.

Separately, a forensic analysis of the defendant's Dell Inspiron by Special Federal Officer William (Bill) Lynn, United States Secret Service and Bloomington Police Department, located not only the pictures of R.P., but also 937 images and 21 videos of child pornography in the Recycle Bin folder.  Five hundred of these files were offered into evidence at trial.  They all depict prepubescent children, some as young as two-years-old, with their genitals displayed in a lascivious manner.  The video files show young children engaged in masturbation.  Officer Lynn described how the files were sorted into user-created subfolders, and that the defendant had attempted to burn a copy of those folders to a CD, and then tried and failed to erase them using evidence eliminating software.

Finally, with respect to J.P., the defendant engaged in oral sexual intercourse with J.P. on multiple occasions from the time she was 8 until she was 14.  He also "took" J.P.'s virginity.

### B.     Argument

In crafting a sentence for the defendant, the court shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—
      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
      (B) to afford adequate deterrence to criminal conduct;
      (C) to protect the public from further crimes of the defendant; and
      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—
      (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...

(5) any pertinent policy statement—
      (A) issued by the Sentencing Commission ...

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

     As properly calculated by the Probation Office, the defendant's guideline range is life.  Because the statutory maximum sentences for his counts of conviction are 30 years (production) and 10 years (possession), pursuant to U.S.S.G. § 5G1.2(d), the Court should impose the maximum sentence on each count, to run consecutively, which would result in a 40 year sentence (480 months).

         1.    *Nature and Circumstances of the Offense.*

     With respect to the nature and circumstances of the offense and the history and characteristics of the defendant, there are three points that the United States emphasizes.  First, the most telling thing about the defendant's sentencing memo is not

what it says, but what it does not say.  At no point does the defendant ever express any remorse for his crimes.  He is, in a word, unrepentant.  He exploited R.P. in the worst way and as evident from his commentary, has no respect for the jury's verdict, the criminality of his conduct, or the negative impact he has had on R.P.'s life.  Given his refusal to acknowledge his criminal conduct, a sentence of 480 months is the only way to convey to the defendant that his are serious offenses and he should respect the law. *See United States v. Kapordelis*, 569 F.3d 1291, 1318 (11th Cir. 2009) (affirming district court's upward variance to the statutory maximum "because it was unlikely that Kapordelis would be rehabilitated given his attitude and lack of remorse.")[7]

Second, the defendant is a serial predator who targets and consumes his female relatives for his own sexual pleasure, first with J.P and then with R.P.  Given his past conduct, there is reason to believe that it may have only been a matter of time before he set his sights on one of his step-grandchildren.  His charm and intellect conceal the simple fact that he is and has been a danger to those closest to him.  Sigmund Freud once said, "I cannot think of any need in childhood as strong as the need for a father's protection."  Sadly, R.P. was unprotected in her own home - the one place every child should feel safe, loved and protected.  A sentence of 480 months would properly account for his history of sexually preying on his family.

---

[7] Kapordelis was convicted of production and receipt of child pornography for conduct that took place before April 30, 2003, when the statutory penalties were increased.  569 F.3d at 1299-1305; PROTECT Act, Pub. L. No. 108-21, § 103, 117 Stat. 652-53 (April 30, 2003).  Therefore, his sentence of 420 months was the statutory maximum penalty available at the time for his crimes.

Finally, the Court should not underestimate the significance of the fact that the defendant distributed the images of R.P., and that those images are now in circulation. Unlike many other defendants charged with child pornography offenses appearing before this Court, the circumstances of this particular case distinguish it from the others. This defendant was a producer, actively contributing to the ever-growing market of child pornography. R.P.'s images have been widely circulated; there is no way that that the these the images can ever be removed from the internet. No matter how hard R.P. tries to forget and overcome her childhood with the defendant, these images are permanent records of the exploitation and abuse she endured.

On this point, the Seventh Circuit's recent decision in *United States v. Klug*, --- F.3d ---, 2012 WL 639279 (7th Cir. 2012), is illuminating. In that case, the defendant, like the defendant here, was convicted of producing and possessing child pornography. 2012 WL 639279, *1. Klug, who held a leadership position in a children's youth ministry, surreptitiously filmed boys while they were showering or changing clothes when he supervised them on camping trips. *Id.* The defendant argued that his sentence of 384 months was too high because "no harm came to the children he filmed because there was no sexual contact." *Id.* at *3.

The Seventh Circuit rejected this argument because the defendant:

circulated his films on the Internet and caused distinct and serious harm to his victims by giving their images a permanent existence and the potential for endless replication, all of which is beyond the control of the victims. And even though the facial features in the images were cropped before they were traded by Klug, facial features are not the only basis that can be used to identify or recognize a person depicted in an image. The Supreme Court, concluding that governments have the greatest latitude to

21

regulate sexually explicit images when children are depicted, observed that child pornography is pernicious precisely because the harm it produces is not limited to the sexual abuse it depicts. "Because the child's actions are reduced to a recording," the Court reasoned, "the pornography may haunt him in future years, long after the original misdeed took place." *New York v. Ferber,* 458 U.S. 747, 760 n. 10, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); *see also Osborne v. Ohio,* 495 U.S. 103, 111, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (observing that "pornography's continued existence causes the child victims continuing harm by haunting the children in years to come"). The Court emphasized this point in *Ashcroft v. Free Speech Coalition,* observing that "as a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated." 535 U.S. 234, 250, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). As with defamatory statements, the Court explained, every publication of the image "would cause new injury to the child's reputation and emotional well-being." *Id.* Indeed, in the years since *Ferber* was decided, federal courts have focused on the enduring harm to the child victims in concluding that child pornography offenses warrant harsh sentences. *See United States v. Blinkinsop,* 606 F.3d 1110, 1118 (9th Cir.2010) (observing that laws punishing receipt and possession of child pornography create incentive to destroy materials and thus alleviate the continuing harm inflicted on child victims whose "images have been preserved in a permanent medium"); *United States v. Daniels*, 541 F.3d 915, 924 (9th Cir.2008); *United States v. Goff,* 501 F.3d 250, 259 (3d Cir.2007); *United States v. Gross,* 437 F.3d 691, 693 (7th Cir.2006); *see also* Child Pornography Prevention Act of 1996, Pub.L. No. 104–208, § 121, 110 Stat. 3009, 3009–26 (1996) (setting out Congressional finding that "the creation or distribution of child pornography which includes an image of a recognizable minor invades the child's privacy and reputational interests, since images that are created showing a child's face or other identifiable feature on a body engaging in sexually explicit conduct can haunt the minor for years to come").

*Id*.

There are two aggravating factors which distinguish the defendant here from *Klug*. First, Klug had no known history of committing child sexual abuse, while the defendant here has been sexually abusing children for over 30 years. *Id*. at *2. Second, unlike Klug, the defendant did not crop R.P.'s face out of the images before sending

them into circulation on the internet.  *Id.* at *3.  Therefore, the reputational harm inflicted on her is even more acute.  As such, the defendant merits a 480 month sentence.

      2.      *The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.*

The seriousness of this offense cannot be overstated.  The defendant has affected not only R.P.'s life and J.P.'s life, he impacted the lives of hundreds of children whose images he collected.  The defendant has no respect for the law and continues to argue that he committed no crime.  The only just punishment for this is a lengthy prison sentence.  He must be separated from society for as long as the law allows.

      3.      *To afford adequate deterrence to criminal conduct.*

The *New York v. Ferber*, 458 U.S. 747 (1982), the United States Supreme Court referenced numerous research materials detailing the harm to children as a result of the production and trafficking of child pornography.

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution.  Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place.  A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.  Shouvlin, Preventing the Sexual Exploitation of Children:  A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981).  See also Child Exploitation 292 ("[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions");  Note, Protection of Children from Use in Pornography:  Toward Constitutional and Enforceable Legislation, 12 U.Mich.J. Law Reform 295, 301 (1979) (hereafter cited as Use in Pornography) (interview with child psychiatrist) ("The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child").

458 U.S. at 758, n.9.

The Supreme Court recognized that the "most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties" on promoters of child pornography. *Id*. at 760. The defendant not only fails to show any remorse for his conduct, he advocates and justifies his actions. The only way to deter future conduct by the defendant and to send a message to like-minded individuals is to impose a significantly lengthy penalty.

    4.    *To protect the public from further crimes of the defendant.*

A sentence of 480 months imprisonment plus lifetime supervised release is the only reasonable way of protecting the public from further crimes of this defendant.

    5.    *To provide the defendant with needed educational or vocational training, medical care, or other corrective treatment.*

Due to the defendant's age and history, there is no need for educational or vocational training. As noted in footnote 5, the defendant will receive medical and corrective treatment through the Bureau of Prisons. Should he ever admit to his criminal conduct, sex offender treatment would also be available to him through the Bureau of Prisons.

    6.    *The kinds of sentences available.*

Under the sentencing guidelines range noted in the presentence report, the defendant is in "zone D" which requires the minimum sentence to be served as a term of imprisonment.

## CONCLUSION

R.P., J.P., and the minors depicted in the images viewed and collected by the defendant suffer real and everlasting damage.  By creating a permanent record of her exploitation and feeding the child pornography market, the defendant directly encouraged the abuse of countless other minors.  This Court, through its sentence, has the ability to deter not only future criminal conduct by the defendant, but also of others who will hear about this case.

WHEREFORE, the United States moves the Court to deny the defendant's request in his Sentencing Memorandum to vary downward from the guidelines and instead moves the Court to sentence the defendant to a sentence of 360 months imprisonment on Count 1, and 120 months for Count 2, for a total of 480 months or 40 years.  The United States also asks the Court impose lifetime supervised release following the defendant's release from prison.

March 9, 2012                                  Respectfully submitted,

                                               JAMES A. LEWIS
                                               UNITED STATES ATTORNEY

                                               s/Elly M. Peirson
                                               Elly M. Peirson, IL Bar No. 6298075
                                               Assistant United States Attorney
                                               201 S. Vine Street, Suite 226
                                               Urbana, Illinois 61802
                                               Telephone:  (217) 373-5875
                                               Fax:  (217) 373-5891
                                               elly.peirson@usdoj.gov

25

Alexandra R. Gelber, DC Bar No. 473773
Assistant Deputy Chief
U.S. Dept. of Justice, Criminal Division
Child Exploitation and Obscenity Section
1400 New York Avenue, NW, Suite 600
Washington, DC 20530
Telephone: (202) 307-1316
Fax: (202) 514-1793
alexandra.gelber@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2012, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing

to the following:

>   John Gray Noll
>   Daniel A. Noll
>   Stand-by counsel

I further certify that on this same date, I placed a copy of the foregoing response in the

United States Mail, First Class, postage prepaid, addressed to:

>   Jeffrey Price
>   Pro se Defendant
>   Pike County Jail
>   204 E. Adams Street
>   Pittsfield, IL 62363

>   s/Elly M. Peirson
>   Elly M. Peirson, IL Bar No. 6298075
>   Assistant United States Attorney
>   201 S. Vine Street, Suite 226
>   Urbana, Illinois 61802
>   Telephone:  (217) 373-5875
>   Fax:  (217) 373-5891
>   elly.peirson@usdoj.gov