IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. 09-cr-30107 |
| **JEFFREY PRICE,** | ) |
| **Defendant.** | ) |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Jeffrey Price's amended Motion for Compassionate Release (d/e 233) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A).  For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

On November 4, 2011, a jury found Defendant guilty of one count of use of a minor to produce child pornography in violation of 18 U.S.C. §§ 2251(a) and (e) and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(5)(B) and (b)(2). Minute Entry, November 4, 2011.  On March 12, 2012, the undersigned District Judge sentenced Defendant to 216 months'

imprisonment, consisting of 216 months on the first count and 72 months on the second count to run concurrently with each other. Judgment, d/e 188.  Defendant is currently serving his sentence at FCI Milan in Milan, Michigan and has a projected release date of February 20, 2025.  See Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last accessed August 18, 2020).

On July 30, 2020, Defendant filed a pro se motion for compassionate release (d/e 232) pursuant to 18 U.S.C. § 3582(c)(1)(A).  On August 3, 2020, after appointment of the Federal Public Defender, Defendant filed an amended motion for compassionate release (d/e 233).  Defendant requests compassionate release due to his health issues and the COVID-19 pandemic.  Defendant is 56 years old and suffers from several chronic health conditions.  Among these are hypertension, chronic kidney disease Stage II (mild), possible multiple sclerosis, and a history of smoking.  Reply 1, d/e 237.

Defendant initially proposed to live with his wife Patricia in Springfield, Illinois, if released.  Am. Mot. Compassionate Release 5. The United States Probation Office, in a Memorandum (d/e 234) addressing Defendant's request for compassionate release, initially

concluded that Defendant's wife's home would be a suitable residence for Defendant.  In a revised Memorandum (d/e 238), however, Probation concluded that the proposed residence would not be suitable because Mrs. Price babysits for two of her grandchildren and her other three grandchildren regularly visit the home.  The Court subsequently directed Defendant to provide an alternative release plan, and in an Amended Reply (d/e 241) to the Court's order, Defendant proposed to live at the Lincoln Lodge in Springfield, Illinois, where his wife could pay the weekly rent until Defendant could reactivate his Social Security benefits and secure more stable housing.  Am. Reply to Court Order Regarding Alternative Release Plan 2-3.  According to the Amended Reply, and as confirmed by the Probation Office, the proposed residence is an acceptable location for Defendant to reside as a registered sex offender.  Id. at 3.

On August 6, 2020, the Government filed a Response in Opposition to Defendant's Motion for Sentence Reduction (d/e 236).  The Government argues that the Court should deny Defendant's compassionate release motion given Defendant's criminal history and because Defendant does not meet the requirements for

compassionate release.  The Government also notes that the Bureau of Prisons (BOP) has implemented procedures designed to curb the spread of the virus in its facilities.  The Government also filed a Supplemental Response in Opposition to Defendant's Motion for Sentence Reduction (d/e 240) addressing in greater depth Defendant's diagnoses of chronic kidney disease, while maintaining that defendant's motion should still be denied after consideration of the factors set out at 18 U.S.C. § 3553(a).

On August 18, 2020, the Court held a videoconference hearing on Defendant's amended motion.  Defendant appeared by video from FCI Milan.  The victim in this case was notified of the hearing by the Government, but she declined to participate in the hearing, though she did inform the attorney for the Government that she opposed Defendant's release.  As of August 18, 2020, BOP reports that FCI Milan has two confirmed inmate cases of COVID-19 and one confirmed staff member case of COVID-19.  See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed August 18, 2020).

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from

modifying a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c). However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A). See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194. Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief. With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting thirty days from when the inmate made his or her request, whichever is earlier. The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of

imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Having considered the relevant factors set forth in 18 U.S.C. § 3553(a), the Court concludes that Defendant has not established that extraordinary and compelling reasons warrant a reduction in his term of imprisonment.

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons. Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation. Socially distancing can be difficult for individuals living or working in a prison. Further, Defendant has been diagnosed with underlying medical conditions that may increase the serious risks that COVID-19 presents for Defendant.

See Coronavirus Disease 2019 (COVID-19) – People at Increased Risk of Severe Illness – People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed August 18, 2020).

Among Defendant's health conditions, he has been diagnosed with chronic kidney disease, Stage II (mild), which the CDC's latest guidance indicates increases the risks of severe illness from COVID-19. Despite Defendant's lengthy incarceration though, based on the BOP medical records that have been provided (d/e 235), this condition does not appear to have required medical treatment up to this point, although Defendant did testify at the hearing on his motion that he may require medication or other treatment for the condition in the future. Similarly, while Defendant has been diagnosed with hypertension, which the CDC's current guidance indicates may increase the risks from COVID-19, that condition appears to be well-managed, as the only blood pressure readings in

the medical records are well below the goal blood pressure levels. Defendant is also a former smoker, which the CDC states may increase the risks from COVID-19, but Defendant has presumably now been a former smoker for at least several years since BOP banned smoking in its facilities.  Defendant also notes that the CDC states that persons with neurological conditions may be at increased risk from COVID-19, but Defendant has received conflicting diagnoses about whether or not he does in fact have multiple sclerosis.

The Court recognizes that there have previously been many confirmed case of COVID-19 at FCI Milan, the facility where Defendant is housed.  According to the Government, however, BOP has implemented rigorous procedures designed to mitigate the spread of the virus in its facilities.  At the time Defendant filed his pro se motion on July 30, 2020, the BOP's website reported three active confirmed inmate cases of COVID-19 and one confirmed staff member case at FCI Milan.  In the intervening weeks between when Defendant filed his pro se motion and when the Court held a hearing on the amended motion, the only change in the case numbers at FCI Milan has been that the number of active confirmed

inmate cases has decreased from three to two. For now at least, BOP's efforts to control the spread of the virus at the facility appear to be working, although the Court does recognize that testing has been limited.

Further, Defendant has approximately four and a half years remaining on his sentence, assuming he receives full good time credit. In committing the offense for which he is now incarcerated, Defendant not only possessed child pornography, he personally exploited his own daughter in order to produce child pornography. Moreover, Defendant has shown no remorse for his offense. At the hearing on Defendant's motion, Defendant continued to maintain that the pictures he took of his daughter were not pornographic, despite the fact that a jury found otherwise. Defendant's reluctance to accept responsibility does not reassure the Court that Defendant will not offend again in the future. That concern is heightened by the fact that Defendant has not yet received sex offender treatment during his incarceration. Defendant's criminal history also includes a previous conviction for solicitation of a sexual act. The Court does note, however, that Defendant has not been disciplined while in BOP custody.

Finally, Defendant has not proposed a release plan that the Court finds adequate. Based on Probation's revised Memorandum and the regular presence of children in the home, the Court would have serious concerns about approving Mrs. Price's home as Defendant's residence if he were to be released. Defendant's alternative release plan likewise gives the Court concern as residing in a hotel may place Defendant in close proximity to families traveling with children.

The Court, taking all the relevant facts into account, finds that Defendant has not established that there exist extraordinary and compelling reasons that warrant a reduction in his term of imprisonment.

### III. CONCLUSION

For the reasons set forth above, Defendant Jeffrey Price's amended Motion for Compassionate Release (d/e 233) and Defendant's pro se Motion for Compassionate Release (d/e 232) are DENIED. This ruling does not preclude Defendant from filing another motion for compassionate release in the future if

circumstances change.

ENTER: August 18, 2020

> */s/ Sue E. Myerscough*
> SUE E. MYERSCOUGH
> UNITED STATES DISTRICT JUDGE